UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 06-21075-CIV-MORENO/SIMONTON

ALICE ALYSE,

    Plaintiff,

vs.

ERIC A SPROSTY, TWYLA THARP,
ABBIE M. STRASSLER, EMANUEL
AZENBERG, JAMES L. NEDERLANDER,
SCOTT E. NEDERLANDER, TERRY ALLEN
KRAMER, HAL LUFTIG, CLEAR CHANNEL
ENTERTAINMENT, a Foreign Corporation,
MOVIN' OUT TOUR COMPANY, L.P., a
Limited Partnership, IRON MOUNTAIN
PRODUCTIONS, INC., a Foreign Corporation,
LIBERTY MUTUAL INSURANCE, a Stock
Insurance Company,

    Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR REMAND**

THIS CAUSE came before the Court upon Plaintiff's Motion for Remand and Attorneys Fees and Costs and Memorandum of Law **(D.E. No. 11)** filed on **May 26, 2006**. For the reasons set forth below, it is **ADJUDGED** that Plaintiff's Motion is **GRANTED IN PART AND DENIED IN PART.**

**I. BACKGROUND**[1]

Plaintiff is a professional dancer who auditioned for the national touring company of the Broadway show, "Movin' Out" in 2003 and was offered the job. On December 15, 2003, Plaintiff

---

[1] The facts are taken from Plaintiff's Complaint, for purposes of this Order.

began rehearsals for the show and began performing with the show's national tour. Upon joining the Tour Company, Plaintiff signed a Standard Minimum Production Contract ("Contract") that incorporated the terms (the "Rules") of the collective bargaining agreement between her union, Actors' Equity Association, and the League of American Theatres and Producers.

From the beginning of her employment with Movin' Out, Plaintiff alleges that she observed there existed a culture of fear and intimidation. Plaintiff claims she witnessed pervasive harassment as well as sexual, ethnic, and other forms of discrimination - so much so that she was fearful for her job. In addition, Plaintiff claims there was a general tolerance of foul and offensive language and behavior by some Defendants.

On September 23, 2004, Plaintiff injured her right toe while dancing when she was dropped from a lift. Plaintiff allegedly asked for leave to go see a doctor, but was not given such leave for over a week and a half. During this time, Plaintiff felt she had to continue dancing to keep her job. An MRI later showed that she had fractured the joint and would need to take time off to recuperate and heal. This injury caused Plaintiff to be away from the show from September 23, 2004 through January 31, 2005.

During this time, Plaintiff maintained her conditioning, but noticed a natural increase in her breast size. As such, Plaintiff notified Defendant Sprosty that she would need adjustments to her costumes. Plaintiff also informed Defendant Sprosty that her Doctor recommended she take an additional week to recover than originally scheduled. Based on Sprotsy's highly offensive and outrageous replies, Plaintiff felt great anxiety and emotional distress and feared for her job.

Plaintiff maintains that upon her return, the workplace climate continued to be one of harassment and intimidation. Among the examples Plaintiff describes in her Complaint, she claims

Sprosty would make unwanted references to her about his past sexual exploits, managers were allowed to make sexual advances towards Plaintiff, and male dancers were allowed to grab her breasts during performances. Plaintiff then reinjured her toe when it was kicked by a dancing partner during a scene in the show. Her foot was placed in a medical boot and the Company asked her to leave the tour to recover.

After having a difficult time securing insurance benefits, Plaintiff had surgery on December 14, 2005 and returned home to Miami for rehabilitative medical care and therapy. During this time, Movin' Out had a show in Miami, but Plaintiff was denied backstage access. When she was finally allowed to visit her fellow cast mates backstage, she learned that the hostile work environment had continued and that Defendant Sprosty had told the cast that he "would do everything possible to prevent [Plaintiff] from returning to the show." This remark, among others, led Plaintiff to believe that she would be fired regardless of when she was able to return to the show.

Plaintiff wrote Defendant Strassler, the General Manager, describing these incidents and attached a copy of her medical records describing her condition. Plaintiff was originally scheduled to return to the show on March 14, 2006. In response, however, Movin' Out stated that she would have to wait until after October 3, 2006 to return to the show and that her return was expressly conditioned upon her signing a release exonerating defendants from all liability from harassment and other tortious acts. Plaintiff responded she could return much earlier, but would not sign the release. Movin' Out then terminated her contract on or about February 10, 2006.

On March 20, 2006, Plaintiff filed this Complaint in the 11th Judicial Circuit Court in and for Miami-Dade County alleging the following sixteen counts: Count I - Breach of Contract Against Non-Liberty Mutual Defendants; Count II - Promissory Estoppel Against Non-Liberty Mutual Defendants; Count III - Defamation Against Non-Liberty Mutual Defendants; Count IV - False Light Against Non-Liberty Mutual Defendants; Count V - Intentional Infliction of Emotional Distress Against Non-Liberty Mutual Defendants; Count VI - Intentional Infliction of Emotional Distress Against Liberty Mutual; Count VII - Invasion of Privacy Against Non-Liberty Mutual Defendants; Count VIII - Negligence and Negligent Supervision Against All Defendants; Count IX - Wrongful Termination Against Non-Liberty Mutual Defendants; Count X[2] - Assault Against Non-Liberty Mutual Defendants; Count XI - Unlawful Discriminatory Practices Against Non-Liberty Mutual Defendants; Count XII - Fraud Against Non-Liberty Mutual Defendants; Count XIII - Conspiracy Against All Defendants; Count XIV - Tortious Interference with Union Business Relationship Against all Defendants; Count XV - Negligent Misrepresentation as to Non-Liberty Mutual Defendants; and Count XVI - Tortious Interference With Business Relations With Liberty Mutual Defendant.  Within 30 days of acceptance of service and within one year of the commencement of the action in state court, the Movin' Out Defendants filed a Notice of Removal pursuant to 28 U.S.C. § 1446(b).  Plaintiff then filed this Motion for Remand **(D.E. No. 11)** on May 26, 2006.

---

[2]In the Complaint, Plaintiff incorrectly numbered the Counts when she used roman numeral "IX" twice. For purposes of this Order, the Court has corrected this mistake and refers to the Counts in the proper order.

## II. LEGAL STANDARD

The burden of establishing federal jurisdiction falls on the party who is attempting to invoke the jurisdiction of the federal court. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). Courts should strictly construe the requirements of 28 U.S.C. §1441 (removal jurisdiction) and remand all cases in which such jurisdiction is doubtful. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941). Moreover, removal statutes are construed narrowly, and when the plaintiff and defendant clash on the issue of jurisdiction, uncertainties are resolved in favor of remand. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

## III. ANALYSIS

Removal jurisdiction based on a federal question is ordinarily governed by the well-pleaded complaint rule which provides that "unless the face of a plaintiff's complaint states a federal question, a defendant may not remove a case to federal court ... even though a possible defense might involve a federal question." *Ervast v. Flexible Products Co.*, 346 F.3d 1007, 1012 (11th Cir. 2003). A narrow exception to this rule is complete preemption, which exists when Congress has so completely preempted an area of the law that state law claims are considered converted into federal claims and removable based on federal question jurisdiction. *Id.* (citing *Metropolitan Life Ins. Co. V. Taylor,* 481 U.S. 58, 63-63 (1987).

> Section 301(a) of the Labor Management Relations Act ("LMRA") provides:
>
> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. §185(a). "This section grants jurisdiction to federal courts to adjudicate employment

disputes involving collective bargaining agreements, and it embodies the policy that federal law, fashioned from national labor law, should provide the substantive law that applies in §301(a) suits." *Bartholomew v. AGL Resources, Inc.*, 361 F.3d 1333, 1338 (11th Cir. 2004).

In the instant case, the Court must first determine whether the Contract between Plaintiff and Non-Liberty Mutual Defendants is a collective bargaining agreement, for purposes of §301. If the court determines that the aforementioned Contract is essentially a collective bargaining agreement, then Court must then decide whether the claims presented here are such that §301 preempts them.

**I. The Contract between Plaintiff and Defendant is a collective bargaining agreement for §301 preemption purposes.**

Under the terms of ¶5 of the Contract Plaintiff signed, Plaintiff expressly agreed to be bound by the rules of the collective bargaining agreement:

> Both the Producer and Actor agree that each and every provision, including, the arbitration provision, contained in the Rules, is and becomes a part of this contract, as though set forth at length herein; they have read said Rules and admit actual notice and knowledge of same; each and every term of said Rules is of the essence of the contractual relationship between them ...

Standard Minimum Protection Contract at ¶5. As such, the Rules of the collective bargaining agreement are explicitly incorporated into the Contract between Plaintiff and the Non-Liberty Mutual Defendants. Parties to a contract may incorporate contractual terms by reference to a separate, noncontemporaneous document, including a separate agreement to which they are not parties, so long as the contract makes clear reference to the document being incorporated and describes it in such terms that its identity may be ascertained beyond doubt. Richard Lord, Williston on Contracts §30:25 (4th ed. 2006). Here, it was clearly the intention of all parties

involved to be bound by the Rules of the collective bargaining agreement.

When an employee arguably bound by a collective-bargaining agreement asserts an individual employment contract as the basis for a lawsuit, "issues going to the heart of national labor policy arise, for the strength of our labor policy lies in its emphasis on collective efforts rather than individual action. The U.S. Supreme Court recognized this fundamental conflict in *J.I. Case Co. v. NLRB*, 321 U.S. 332 (1944), when it held that to the extent that an individual contract and a collective agreement are inconsistent, the latter must prevail." Id. at 337-39. The terms of the Contract that Plaintiff claims were breached (see Count I) are all "Rules" taken from the collective bargaining agreement – in effect, terms that were "collectively bargained" for. *See Id.* In other words, the Plaintiff is essentially claiming that the collective bargaining agreement was breached, not the individual employment contract.

Next, Plaintiff argues that removal was improper and that remand is warranted because §301 does not apply. Plaintiff maintains that "it is clear on the face of the statute that Section 301 only preempts a state law cause of action for violation of a contract **between an employer and a labor union**." Plaintiff's Motion for Remand at 5 (emphasis added). Therefore, Plaintiff maintains the position that because the contract was technically between Plaintiff, the employee, and Non-Liberty Mutual Defendants, the employer(s), §301 does not apply.

Although the language of § 301 specifies that it applies to suits "between an employer and a labor union," the Supreme Court in *Smith v. Evening News Ass'n*, 371 U.S. 195 (1962) rejected the notion that for § 301 to apply, the suit had to be between an employer and a labor union. In *Smith*, the Court acknowledged that "the concept that all suits to vindicate individual employee rights arising from a collective bargaining contract should be excluded from the coverage of § 301

has thus not survived." *Id.* at 199; *See also Kaylor v. Crown Zellerbach, Inc.*, 643 F.2d 1362, 1366 (9th Cir. 1980) ("Individual employees may sue their employer for breach of a collective bargaining agreement under § 301 of the Labor Management Relations Act ...."). Therefore, for purposes of § 301 preemption, the Contract between Plaintiff and Non-Liberty Mutual Defendants at issue here is a collective bargaining agreement.

**II. §301 does not preempt Plaintiff from bringing these state law claims.**

"Section 301 governs claims founded *directly* on rights created by collective bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987) (emphasis added). As such, under § 301, state law causes of action that depend upon interpretation of a collective bargaining agreement for their resolution are preempted and must be construed as federal law claims. However, "[i]t is important to note that not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement is preempted by §301." *Peterson v. BMI Refractories,* 132 F.3d 1405 (11th Cir. 1998); *see also Pyles v. United Air Lines, Inc.,* 79 F.3d 1046, 1050 (11th Cir. 1996) ("The fact that reference to a [collective bargaining agreement] may be required, particularly where factual issues are involved, is insufficient of itself to preempt an independent state-law claim; only where the interpretation of a [collective bargaining agreement] is required will the claim be preempted."). A state-law claim is preempted by §301 if "evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract" or, stated another way, "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Bartholomew*, 361 F.3d at 1338 (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985).

The U.S. Supreme Court's most recent decision detailing the proper forum relationship between § 301 and state law claims is *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988).  In *Lingle*, the Supreme Court held that the plaintiff's claim for retaliatory discharge was not preempted by §301, although the collective bargaining agreement between the plaintiff and defendant specifically addressed the issue of retaliatory discharge.  486 U.S. at 406-07.  The Court listed the elements necessary to prove the state law claim of retaliatory discharge and reasoned that because "[e]ach of these purely factual questions pertains to the conduct of the employee and the conduct and motivation of the employer" and "neither of the elements requires a court to interpret any term of a collective-bargaining agreement," the state law claims were not preempted by §301.  *Id.* at 407.  The Court went on to say that "even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for §301 preemption purposes." *Id.* at 410.  In other words, the Court may determine questions of state law involving labor management relations only if such questions do not require construing collective bargaining agreements.  *Id.* at 411.

The *Lingle* Court further noted that there is "nothing novel about recognizing that substantive rights in the labor relations context can exist without interpreting collective bargaining agreements."  Furthermore, "notwithstanding the strong policies encouraging arbitration, 'different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers.'"  *Id.* at 411 (citing *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 737; *Atchison, T. & S. F. R. Co. V. Buell*, 480 U.S. 557, 564-65).  Here, the Court must determine whether the state law

claims are "inextricably intertwined" with the terms of the collective bargaining agreement, such that adjudication of these claims would require the court to interpret the terms of the collective bargaining agreement.

### a. This Court retains jurisdiction over Counts I, VIII, and IX.

Count I for Breach of Contract Against Non-Liberty Mutual Defendants, Count VIII for Negligence and Negligent Supervision Against All Defendants, and Count IX for Wrongful Termination Against Non-Liberty Mutual Defendants depend upon interpretation and analysis of the Rules of the collective bargaining agreement and therefore, these counts are preempted by § 301. *See Caterpillar Inc.,* 482 U.S. 386.

As evidenced by Plaintiff's Complaint, Count I is a claim for breach of contract of particular Rules (e.g., Rules 13, 23, 34, 36, and 39), from the collective bargaining agreement. The evaluation of this claim is inextricably intertwined with the terms of the collective bargaining agreement such that adjudication of this claim is dependant upon an analysis of the specified Rules and would require the court to interpret the terms of the collective bargaining agreement. Hence, Count I is preempted by § 301.

Likewise, Count VIII for negligence is also preempted by § 301. Under Florida law, the threshold inquiry to determine whether a cause of action for negligence exists is an examination of the contract to ascertain what duties were accepted by each of the parties and the scope of those duties. *Electrical Workers v. Hechler,* 481 U.S. 851, 860 (1987). Here, the nature and scope of the duty of care owed to Plaintiff by Defendants is determined by reference to the collective bargaining agreement. *Id.* at 863. Again, the resolution of this claim is substantially dependent upon analysis of the terms of the collective bargaining agreement. *See Bartholomew,* 361 F.3d at 1338.

Lastly, Count IX for Wrongful Termination Against Non Liberty Mutual Defendants is also preempted by § 301 because in order to determine whether Plaintiff's termination was wrongful, the Court will have to interpret the Rules related to termination and accordingly, determine whether Plaintiff's termination was proper. As such, adjudication of Count IX is wholly dependent upon the terms of the collective bargaining agreement.

### b.  Counts II, III, IV, V, VI, VII, X, XI, XII, XIII, XIV, XV and XVI are remanded.

All remaining Counts are REMANDED to the 11th Judicial Circuit in and for Miami-Dade County.  Count II for Promissory Estoppel Against Non Liberty Mutual Defendants, Count III for Defamation Against Non Liberty Mutual Defendants, Count IV for False Light Against Non-Liberty Mutual Defendants, Count V for Intentional Infliction of Emotional Distress Against Non Liberty Mutual Defendants, Count VI for Intentional Infliction of Emotional Distress Against Liberty Mutual, Count VII for Invasion of Privacy Against Non Liberty Mutual Defendants, Count X for Assault Against Non Liberty Mutual Defendants, Count XII for Unlawful Discriminatory Practices Against Non Liberty Mutual Defendants, Count XII for Fraud Against Non Liberty Mutual Defendants, Count XIII for Conspiracy Against All Defendants, Count XIV for Tortious Interference With Union Business Relationship Against All Defendants, Count XIV for Negligent Misrepresentation, and lastly Count XVI for Tortious Interference With Business Relations With Liberty Mutual Defendants are all independent state law actions that do not depend on interpretation of the CBA for their adjudication.

"Claims bearing no relationship to a collective-bargaining agreement beyond the fact that they are asserted by an individual covered by such an agreement are simply not preempted by § 301." *Caterpillar,* 482 U.S. at 397 n.10.  Although Defendants maintain that the crux of Plaintiff's Complaint is "that the Movin' Out Defendants acted improperly when they did not allow

her to return to the show after her 12 month disability leave," the Court does not believe this is correct. Non-Liberty Mutual Defendants Response to Mot. to Remand, p. 13. The Court finds that the "crux" of Plaintiff's complaint bears no relationship to the collective bargaining agreement. Rather, the "crux" of the Complaint implicates purely factual questions pertaining to the conduct and motivations of the Defendants. *See Lingle*, 486 U.S. at 407 ("Each of these purely factual questions pertains to the conduct of the employee and the conduct and motivation of the employer. Nether of the elements requires a court to interpret any terms of a collective bargaining agreement"). Each of these state law claims is independent of the collective bargaining agreement in the sense that resolution of the remanded state law claims does not require construing the collective bargaining agreement. *See id.* The elements required to prove these individual claims are purely factual questions. While some of Plaintiff's claims may refer to the collective-bargaining agreement, this relationship is nothing more than tangential and this alone is not sufficient for §301 preemption. *See Peterson,* 132 F.3d 1405. The fact finder for each cause of action will need to look at fact based state law in order to determine the validity of the claims; no interpretation of the collective-bargaining agreement is needed.

Furthermore, the Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because the state law claims substantially predominate over the claims over which this Court has original jurisdiction. For the aforementioned reasons,   it is

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Remand **(D.E. No. 11)**  is **GRANTED IN PART**. Count II for Promissory Estoppel Against Non Liberty Mutual Defendants, Count III for Defamation Against Non Liberty Mutual Defendants, Count IV for False Light Against Non-Liberty Mutual Defendants, Count V for Intentional Infliction of Emotional Distress Against Non Liberty Mutual Defendants, Count VI for Intentional Infliction of

Emotional Distress Against Liberty Mutual, Count VII for Invasion of Privacy Against Non Liberty Mutual Defendants, Count X for Assault Against Non Liberty Mutual Defendants, Count XII for Unlawful Discriminatory Practices Against Non Liberty Mutual Defendants, Count XII for Fraud Against Non Liberty Mutual Defendants, Count XIII for Conspiracy Against All Defendants, Count XIV for Tortious Interference With Union Business Relationship Against All Defendants, Count XIV for Negligent Misrepresentation, and lastly Count XVI for Tortious Interference With Business Relations With Liberty Mutual Defendants are hereby **REMANDED** to the Circuit Court for the Eleventh Judicial Circuit in and for Dade County, Florida.  The Clerk of the Court is hereby directed to take all necessary steps and procedures to effect the expeditious remand of the above-styled action. It is also

    **ORDERED AND ADJUDGED** that Plaintiff's Motion for Remand **(D.E. No. 11)** is **DENIED IN PART**.  This Court shall retain jurisdiction over Count I for Breach of Contract, Count VIII for Negligence and Negligent Supervision Against All Defendants, and Count IX for Wrongful Termination Against Non-Liberty Mutual Defendants.  Plaintiffs shall file a Second Amended Complaint in light of this Court's ruling no later than **April 16, 2007**.  Furthermore, all pending motions are **DENIED** as **MOOT** with leave to refile if appropriate.

    DONE AND ORDERED in Chambers at Miami, Florida, this _29th_ day of March, 2007.

                                                _____
                                                FEDERICO A. MORENO
                                                UNITED STATES DISTRICT JUDGE

Copies provided to: Counsel of Record